UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA . Criminal Action
VERSUS . No. H-09-CR-259
JONATHAN DAPPEN, . Houston, Texas
. October 2, 2009
. 10:38 a.m.
Defendant. .
. . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EWING WERLEIN, JR.
REARRAIGNMENT

APPEARANCES:

FOR THE UNITED STATES OF AMERICA:

Mr. Jim McAlister
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
910 Travis, Suite 1500
Houston, Texas 77002
713.567.9300

FOR THE DEFENDANT:

Mr. Edward Michael Rodriguez
RODRIGUEZ & NICOLAS, LLP
50 West Morrison Road
Suite A
Brownsville, Texas 78520
956.574.9333
FAX: 956.574.9337
mrodriguez@rodrigueznicolas.com

PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

COURT REPORTER:

GAYLE L. DYE, CSR, RDR, CRR
515 Rusk, Room 8016
Houston, Texas 77002
713.250.5582

PROCEEDINGS

October 2, 2009

THE COURT: All right. Number 09-259, United States versus Jonathan Dappen.

10:39:04 MR. MC ALISTER: Jim McAlister for the Government, your Honor.

THE COURT: All right. For Defendant?

MR. RODRIGUEZ: Michael Rodriguez on behalf of the Defendant, your Honor.

10:39:10 THE COURT: All right, thank you.

It's my understanding that the Defendant wishes to enter a plea of guilty without a plea agreement on the second superseding criminal information?

MR. MC ALISTER: That is correct, your Honor.

10:39:30 MR. RODRIGUEZ: That's right, your Honor.

THE COURT: All right. Then, I'll ask that the Defendant be sworn.

THE CASE MANAGER: Raise your right hand.

(The Defendant was sworn.)

10:39:44 THE COURT: Do you understand now that you're under oath and that if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement?

THE DEFENDANT: Yes, sir.

10:39:54 THE COURT: The purpose of this hearing is to

10:40:08 determine two things: First, I need to determine if you're mentally competent to participate in this hearing and understand what is happening here this morning. And second, I need to determine whether there's an independent basis in fact to support your plea of guilty to the offense charged against you in Count -- let's see, this is -- Count 3 of the second superseding criminal information.

10:40:28 It's very important, therefore, that you understand my questions and statements to you and anything that either of the lawyers say. If at any time you do not understand what is being said to you, will you ask that it be repeated or rephrased in such a way that you clearly understand what is being said to you before you give your response to me?

THE DEFENDANT: Yes, sir.

10:40:44 THE COURT: What is your full name?

THE DEFENDANT: Jonathan Richard Dappen.

THE COURT: How old are you?

THE DEFENDANT: 29 years old.

THE COURT: How far did you go in school?

10:40:52 THE DEFENDANT: I went to college, sir.

THE COURT: Where was that, sir?

THE DEFENDANT: Mexico City.

THE COURT: And you read and write in the English language?

10:41:04 THE DEFENDANT: Yes, sir.

THE COURT: Okay. Have you ever been hospitalized or treated by a doctor for any type of mental or psychiatric problem?

THE DEFENDANT: No, sir.

10:41:10 THE COURT: Has any doctor ever suggested that you need to receive that type of treatment?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been treated for addiction to drugs or to alcohol?

10:41:18 THE DEFENDANT: No, sir.

THE COURT: Has any doctor ever suggested that you should receive treatment for that type of addiction?

THE DEFENDANT: No, sir.

THE COURT: Have you taken any kind of medication, 10:41:26 pills or narcotic drugs of any type within the last 48 hours?

THE DEFENDANT: No, sir.

THE COURT: Have you consumed any alcoholic beverage within the last 24 hours?

THE DEFENDANT: Yes, sir.

10:41:34 THE COURT: When was that?

THE DEFENDANT: Yesterday night, last night.

THE COURT: And what did you have at that time?

THE DEFENDANT: Two beers, sir.

THE COURT: And did you have food with it or --

10:41:44 THE DEFENDANT: Yes. I had dinner.

THE COURT: And have you had any alcohol since -- was that with dinner?

THE DEFENDANT: Yes.

THE COURT: Have you had any alcoholic beverage since then?

10:41:54

THE DEFENDANT: No, sir.

THE COURT: And do you have any aftereffect of the two beers that you had last evening?

THE DEFENDANT: No, sir.

10:42:02

THE COURT: Are you -- are you well rested and of clear mind this morning?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any reason that you can think of why you would not be able to understand what is happening here today?

10:42:12

THE DEFENDANT: No, sir.

THE COURT: And have you been able to consult with your lawyer before this hearing began this morning?

THE DEFENDANT: Yes, sir.

10:42:20

THE COURT: Now, have you received a copy of the second superseding information pending against you, that is, the written charge made against you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Have you read it?

10:42:30

THE DEFENDANT: Yes, sir.

THE COURT: Have you gone over it with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Have you talked about the case in general with your lawyer?

10:42:36 THE DEFENDANT: Yes, sir.

THE COURT: About how many times have you talked with your lawyer about the case?

THE DEFENDANT: Almost every day.

THE COURT: Well, what does that mean?

10:42:48 THE DEFENDANT: Every day I call him and ask him questions.

THE COURT: Is that two or three times or is that half a dozen times or more?

THE DEFENDANT: More than a half dozen times, sir.

10:43:00 THE COURT: All right. Are you fully satisfied with counsel and representation and advice given to you by your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I've been told that you intend to 10:43:08 plead guilty to Count 3 of the criminal information. I want to ask whether anyone has made any kind of promise to you or assurance of any kind in order to induce you or persuade you to plead guilty in this case?

THE DEFENDANT: No, sir.

10:43:24 THE COURT: Has the Government or anybody else coerced

you or threatened you or in any way attempted to force you to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that the offense to which you're proposing to plead guilty is a felony offense and, therefore, if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearms and if you're not a citizen of the United States could adversely affect your immigration status in the United States?

Do you understand that those are all probable consequences of pleading guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Have you talked with your lawyer about what the maximum penalty is for the offense charged against you in this Count 3 of the second superseding information?

THE DEFENDANT: Yes, sir.

THE COURT: Let me go over this with you, also. You're charged here with conspiracy to receive stolen goods, stolen condensate.

This offense carries with it a term of not more than five years imprisonment, a fine not to exceed $250,000, a term of not more than three years of supervised release, and a

special assessment of $100.

Has all of that been explained to you?

THE DEFENDANT: Yes, sir.

THE COURT: And when I talk about supervised release, 10:44:54 I'm talking about a condition of supervision that exists when one leaves prison. There are certain conditions imposed that one not commit another federal, state, or local crime; one not possess any kind of firearm. Other conditions are imposed.

If any of those conditions is violated, then the 10:45:12 judge, upon hearing, may set aside your release, order you back to prison for up to two more years in prison just for having broken the term of supervised release.

You understand?

THE DEFENDANT: Yes, sir.

10:45:22 THE COURT: Do you see then what the possible consequences may be in terms of what the maximum possible sentence could be?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand that in the federal 10:45:32 system there's no parole. So, in other words, if you're sentenced to a time in prison, you have to serve that time and will not get out early on parole?

Do you understand?

THE DEFENDANT: Yes, sir.

10:45:42 THE COURT: Now, have you talked with your lawyer

about how the United States Sentencing Commission guidelines for sentencing may apply in your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the sentence -- that the sentencing guidelines are advisory; they're not mandatory?

THE DEFENDANT: Yes, sir.

THE COURT: And therefore, the judge may impose a sentence that is more severe or that is less severe than what is called for by the guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that under certain circumstances either you or the Government would have the right to appeal to a higher Court any sentence that I impose?

THE DEFENDANT: Yes, sir.

THE COURT: Now, you understand that if the Government recommends leniency in your sentencing that you -- and the Court does not follow that advice, you still have to stand by your plea and will not have a right to withdraw it?

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to plead not guilty. And if you plead not guilty and persist in that plea, then you will have the right to a trial by jury, during which you would also have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them

cross examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to come to court and testify in your defense.

10:47:12

Do you understand that under our system you would have all of those rights if you pled not guilty?

THE DEFENDANT: Yes, sir.

THE COURT: But by entering a plea of guilty, if I accept your plea, then there will be no trial and you will have waived or given up your right to a trial, as well as all of those other rights associated with a trial that I just described to you?

10:47:24

THE DEFENDANT: Yes, sir.

10:47:34

THE COURT: Now, let me explain to you the essential elements of the offense with which you're charged in Count 3 of the second superseding information. This alleges conspiracy to receive and sell stolen goods in violation of federal law.

Now, let me first explain to you what the crime is that you're charged with conspiring to commit. The underlying crime is the receipt and sale of stolen goods.

10:47:54

In order to prove that crime would be committed by any person, the Government would have to show:

One, that the property was stolen or unlawfully converted;

10:48:16

number two, that the property had crossed a state or United States boundary after being stolen or unlawfully converted;

number three, that the Defendant received, concealed, sold, or disposed of items of stolen property;

10:48:28

number four, that the Defendant knew the property was stolen or unlawfully converted at the time the Defendant received, concealed, sold, or disposed of it;

and five, such items are of a value of $5,000 or more.

10:48:50

Now, the crime you're charged with is conspiracy to receive and sell stolen goods; and on this conspiracy charge against you, the Government would have to prove the following beyond a reasonable doubt, each of the following elements:

10:49:06

One, that two or more persons made an agreement to commit the crime that I just described to you of receiving, possessing, or selling stolen goods as charged in the second superseding information;

two, that you knew of the unlawful purpose of the

10:49:26

agreement and joined in it willfully, that is, with the intent to further its unlawful purpose;

three, that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the second superseding information

10:49:44

in order to accomplish some object or purpose of the conspiracy.

Do you understand that those are the elements of the offense charged against you in Count 3 of the second superseding information?

THE DEFENDANT: Yes, sir.

10:49:56 THE COURT: I'm going to ask what facts the Government is prepared to prove if you should choose to plead not guilty. I want you to listen to what he has to say, and then, I'm going to ask you about these things while you're still under oath.

Mr. Davis.

10:50:14 MR. MC ALISTER: Your Honor, the Government would be prepared to prove that in 2007 --

THE COURT: I beg your pardon. Mr. Davis was here on the last one.

MR. MC ALISTER: Yes, sir.

10:50:22 THE COURT: Mr. McAlister, I meant to say.

MR. MC ALISTER: Yes, your Honor.

In 2007, the Government of Mexico provided US Immigration and Customs Enforcement, also known as ICE, with information alleging numerous companies and individuals who were 10:50:34 involved in the smuggling of stolen petroleum products, such as natural gas condensate, from Mexico into the United States.

An ICE investigation of the claim by Mexico revealed that Petroleos Mexicanos, P-e-t-r-o-l-e-o-s, Mexicanos, M-e-x-i-c-a-n-o-s, PEMEX, or authorized PEMEX companies were the 10:51:00 only legal owners and exporters of condensate into the United

States from Mexico.

10:51:16

A further investigation by ICE revealed that Mr. Jonathan Dappen was associated with a company named Petro Salum, S-a-l-u-m, and that neither Mr. Dappen nor Petro Salum was associated with PEMEX.

The investigation determined that various US companies and Mexican companies conspired to import Mexican condensate stolen from PEMEX into the United States. The stolen condensate was sold to larger companies within the US.

10:51:32

Mr. Dappen coordinated the receipt of stolen Mexican condensate by semi-tankers for Petro Salum. The condensate was brought into the United States from Mexico via a land border port of entry. Mr. Dappen coordinated the receipt by tanker trucks between Petro Salum and Continental Fuels, a US company located inside the Port of Brownsville, Texas.

10:51:52

Under the arrangement in 2009, Continental Fuels paid Petro Salum and other companies by wire transfer to bank accounts for the stolen Mexican condensate. Continental Fuels then stored the product until there was a sufficient quantity of condensate to load on a barge for delivery to an end user.

10:52:10

The United States can show that Mr. Dappen had knowledge that the transaction described above involved stolen condensate from Mexico through a series of recorded conversations in which arrangements for the sale and transport of stolen condensate were discussed.

10:52:26

10:52:44
10:53:02
10:53:16
10:53:38
10:53:50

As an example of the acts in furtherance of the conspiracy, on January 15, January 21st, and January 23rd Mr. Dappen discussed the payment for the transport of stolen condensate with a representative of Continental Fuels.

The United States can show deliveries of condensate from January, 2009, to March, 2009, through the business records of Continental Fuels.

As an example, on January 26, 2009, records show ten tanker trucks of stolen condensate delivered from Mexico to Continental Fuels. On March 3rd of 2009, records show seven tanker trucks of stolen condensate from Mexico delivered to Continental Fuels.

The total value of the commission which was received by Mr. Dappen for his role as a middleman in the conspiracy between the companies was about $69,000, your Honor.

THE COURT: All right. I want to come back and ask you about these things. I want to step back just a step, though, and ask you one other thing. There is in the file a waiver of indictment that you signed before Judge Froeschner, I believe, yesterday; is that right?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you remember that Judge Froeschner told you your right to have this matter referred to a grand jury?

THE DEFENDANT: Yes, sir.

THE COURT: And which I will remind you, also, a grand

jury is composed of at least 16 and not more than 23 persons and they can listen to the Government's evidence; and if they are not persuaded that a crime is probably committed and that you probably committed it, they could no bill you or, on the other
10:54:14 hand, if they are persuaded, at least 12 of them are in agreement, then they can return an indictment. The grand jury may or may not indict you, and you have a right to take this matter to a grand jury.

Do you understand?

10:54:26 THE DEFENDANT: Yes, sir.

THE COURT: And you've indicated in that document that you wish to waive that right. I gather that you consulted with your lawyer about this before making that decision?

THE DEFENDANT: Yes, sir.

10:54:38 THE COURT: And is that still your decision to waive your right to indictment?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, let me proceed then to -- back to what Mr. McAlister has said. Are those facts that he
10:54:50 has described to you true?

THE DEFENDANT: Yes, sir.

THE COURT: Tell me about -- what is the name of the company that you were affiliated with?

THE DEFENDANT: Petro Salum.

10:55:02 THE COURT: Is that S-a-l-e-m?

THE DEFENDANT: S-a-l-u-m.

THE COURT: Petro Salum. And what was your job with that company?

THE DEFENDANT: I was just a middleman, sir. They came to me telling me that they had products so --

THE COURT: Who came to you?

THE DEFENDANT: The -- one of the persons that worked for -- in Petro Salum.

THE COURT: All right.

THE DEFENDANT: And they told me that if I knew a client. So I did know a client. I went to Continental Fuels. So I put them together so they can buy the product and I earned a commission out of it.

THE COURT: And this was -- you came to find out was stolen product?

THE DEFENDANT: I already knew, sir.

THE COURT: You already knew?

THE DEFENDANT: Yes.

THE COURT: And that came from PEMEX?

THE DEFENDANT: Yes.

THE COURT: And then on these conversations that Mr. McAlister has mentioned, which it said that you were talking about the January -- different dates in January of '09, the conversations where you discussed problems with the payment for stolen condensate. What kind of problems are associated with

that?

THE DEFENDANT: They took more than two or three weeks to pay that -- the delivery. So they were calling me to ask for the payments. So I was asking Mr. Crescenzi for the payments.

10:56:24 THE COURT: You were asking for payment from whom?

THE DEFENDANT: From them, from Continental Fuels to pay Petro Salum for the products.

THE COURT: All right. And what would you undertake to do when the payment came in?

10:56:34 THE DEFENDANT: That way I could get my commission.

THE COURT: All right. And that was what you were getting from this -- from this theft of the condensate --

THE DEFENDANT: Yes.

THE COURT: -- a commission?

10:56:46 THE DEFENDANT: Yes, sir.

THE COURT: All right. Is there any other advice you believe I need to give to the Defendant under Rule 11, Mr. Rodriguez?

MR. RODRIGUEZ: There is not, your Honor. I would

10:56:56 like to possibly clarify one very, very minor issue in the record. Earlier when you asked Mr. Dappen how far he had gone in school, he answered that he did not finish college; and I don't know if you heard exactly that because it was a bit mumbled. I didn't want your records and the record to reflect

10:57:12 that he actually did finish college. He attended but did not

10:57:28

finish in Mexico City.
THE COURT: He attended college but did not finish?
MR. RODRIGUEZ: But did not finish, that's correct.
THE COURT: Yeah. I think I did not have the impression that he earned a degree there. Is that correct?
MR. RODRIGUEZ: That's correct.
THE COURT: All right.
Now, do you know of any reason then why he would not be competent and knowing to enter a voluntary plea or any reason he should not enter a plea of guilty?
MR. RODRIGUEZ: No reason at all, your Honor.
THE COURT: All right.
Then, Mr. Dappen, how do you plead to the charge set forth against you in Count 3 of the second superseding information, guilty or not guilty?
THE DEFENDANT: Guilty, your Honor.
THE COURT: It is the finding of the Court in the case of United States of America versus Jonathan Dappen that the Defendant is fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the charged offense.
The Defendant's plea of guilty is, therefore, accepted; and the Defendant, Jonathan Dappen, is now adjudged guilty of the offense charged against him in Count 3 of the

second superseding information.

Now, a written presentence report will be prepared for me to assist me in the sentencing process. You will be asked to give information for the report, and your lawyer may be present with you if you wish for him to be so. It's very important that you furnish full and accurate information. A failure to do so could be used as a basis to increase the guidelines range.

You and your lawyer will also be permitted to read the presentence report before the sentencing hearing, and you and your lawyer will also have opportunity to speak in your behalf at the sentencing hearing.

The initial presentence report is due November 16th. Objections, if any, or a statement that there are none will be filed by November 30. The final report is due December 14. And sentencing is set for January 15, 2010, at 10:15 a.m.

Now, the Defendant has heretofore been on terms of release.

MR. MC ALISTER: He has, your Honor. And the Government would ask that he continue on those terms of release. He's known about these charges for some time and he's not a flight risk.

THE COURT: All right.

And that's being requested by the Defendant?

MR. RODRIGUEZ: It is, your Honor.

THE COURT: Now, you understand -- you remember, Mr. Dappen, all the conditions of release that were explained to you by the magistrate judge?

THE DEFENDANT: Yes, sir.

10:59:46 THE COURT: All of those will continue to apply and you'll be required to make all hearings, including the sentencing hearing, and adhere to all of those conditions of your release. Do you understand?

THE DEFENDANT: Yes, sir.

10:59:58 THE COURT: All right. With that understood, I'll permit him to continue on bond.

MR. RODRIGUEZ: Your Honor, there's one other issue: Mr. Dappen's passport. He was asked to surrender the passport. I have it here. And we can surrender it to the probation 11:00:16 department or the pretrial services officer here in Houston or in McAllen. Mr. Dappen does live in McAllen. Whatever the Court would prefer.

THE COURT: All right.

Who takes custody of those?

11:00:24 MR. MC ALISTER: I'll walk downstairs to pretrial, your Honor, and we'll turn it in --

THE COURT: All right.

MR. MC ALISTER: -- to the pretrial officer.

THE COURT: If you-all will do that then just after 11:00:32 this hearing, and Mr. McAlister said he'd go with you, too.

MR. RODRIGUEZ: Yes, your Honor.

THE COURT: Anything else today?

MR. MC ALISTER: No, your Honor.

MR. RODRIGUEZ: No, your Honor.

11:00:40 THE COURT: All right. That concludes this hearing. Thank you.

MR. RODRIGUEZ: Yes.

MR. MC ALISTER: Thank you.

MR. RODRIGUEZ: May I be excused?

11:00:42 THE COURT: Yes. Thank you.

MR. RODRIGUEZ: Thank you, your Honor.

(Proceedings concluded at 11:00 o'clock a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, to the best of my ability.

By: /s/*Gayle L. Dye* *10-15-2009*

Gayle L. Dye, CSR, RDR, CRR Date